Jimmie R. CRAWFORD, Plaintiff

v.

UNIVERSITY OF NORTH CAROLINA
et al., Defendants.

No. C–77–173–D.

United States District Court,
M. D. North Carolina,
Durham Division.

Nov. 1, 1977.

1048

Jonathan R. Harkavy and Norman B. Smith of Smith, Patterson, Follin, Curtis & James, Greensboro, N. C., Seymour DuBow and Marc P. Charmatz, National Center for Law and the Deaf Legal Defense Fund, Washington, D. C., for plaintiff.

Elizabeth C. Bunting, Staff Atty., State of North Carolina, Raleigh, N. C., for defendants.

## ORDER ADOPTING THE MAGISTRATE'S FINDINGS AND RECOMMENDATION AND ISSUANCE OF PRELIMINARY INJUNCTION

HIRAM H. WARD, District Judge.

On September 1, 1977, the United States Magistrate's Findings and Recommendation was filed and notice was served on the parties pursuant to 28 U.S.C. § 636. In this action plaintiff sought a preliminary injunction, claiming that his rights under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, were being violated. The Magistrate recommended, *inter alia*, that a preliminary injunction issue but would condition such issuance on plaintiff's initiating a complaint with the Department of Health, Education, and Welfare, that raised the grounds for relief sought in this court's action. For the reasons set out below, this Court accepts and adopts as its own the Magistrate's Findings and Recommendation.

Both parties filed objections to the Magistrate's Findings and Recommendation. Defendants objected to the Magistrate's Finding no. 12 which stated that plaintiff had made an attempt to secure funds for an interpreter but had not been successful. The Court does not find that objection material to the decision in this action. More importantly, the defendants have failed to comply with Local Rule 50(c)(2) of this Court in that they have not submitted a transcript of the proceedings before the Magistrate for this Court to review. The Court, therefore, rejects the objection. Defendants' second objection is to the Magistrate's Finding no. 17 where the Magistrate found that the regulations issued to implement the Rehabilitation Act of 1973 stated that their effective date was June 3, 1977. Defendants contend that the regulation was not effective until a one-year evaluation period had passed, citing 45 C.F.R. § 84.6(c). Contrary to defendants' contention, the Magistrate fully considered this argument, but declined to rule on the contention, stating that a resolution of the question should be reserved for initial agency review. Mag-istrate's Findings and Recommendation n. 5. Defendants' other objections concern issues of law. Specifically, defendants object to the Magistrate's recommendation of the issuance of a preliminary injunction. (Defendants did not object to the Magistrate's recommendation that the matter be stayed until plaintiff had initiated a complaint with the Department of Health, Education, and Welfare.) Inasmuch as the Court adopts the Magistrate's Findings and Recommendation, it rejects these objections.

The plaintiff also filed objections to the Magistrate's Findings and Recommendation. Plaintiff did not object to either the recommendation for a preliminary injunction or the amount of the bond to be posted. Instead, plaintiff objected to the recommendation that he be required to initiate a complaint with the Department of Health, Education, and Welfare. Inasmuch as the Court adopts the Magistrate's Findings and Recommendation, it rejects plaintiff's objection.

Plaintiff further objected to the Magistrate's Finding no. 10. The basis of this objection is that the Magistrate found that plaintiff intended to attend the University during the Fall and Winter sessions. Plaintiff now states that he also intends to take graduate courses at the University during the Summer of 1978. In effect, plaintiff seeks to introduce additional evidence which was not before the Magistrate at the hearing on his motion for preliminary injunction. Local Rule 50(c)(2) of this Court states that a Judge of this Court shall make a de novo determination of those portions of the Magistrate's Findings and Recommendation to which an objection is filed. It further states that the Judge will normally not conduct a new hearing. However, the Court does have the power to receive further evidence or to recommit the matter to the Magistrate with instructions. Plaintiff has not made a motion to reopen the hearing to receive additional evidence, or to recommit the matter to the Magistrate. Therefore, the Court will not decide whether the injunction in this case should be extended to cover any graduate courses

which the plaintiff may take at the University during the Summer of 1978. (In light of this Court's ruling adopting the Magistrate's Findings and Recommendation, it seems that the parties themselves could work out an arrangement concerning the plaintiff's taking additional courses which extend beyond the time period covered by this preliminary injunction.)

Plaintiff further requests the Court to modify the Magistrate's Finding no. 17 to reflect the fact that the Magistrate admitted into evidence an affidavit of John Wodatch, Acting Director of the Office of New Programs, Office for Civil Rights, Department of Health, Education, and Welfare, which indicates that the effective date of the Rehabilitation Act regulations upon which plaintiff relies is June 3, 1977. Since the Magistrate did not definitively decide the effective date of the regulations, the Court finds no reason to modify the Magistrate's finding of fact. The Magistrate admitted the affidavit into evidence, and the exhibit speaks for itself. It does not modify the substance of the Magistrate's Findings and Recommendation.

The Court hereby accepts the Findings and Recommendation of the Magistrate and adopts it as its own.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the defendants William C. Friday, William A. Johnson, and Harold F. Robinson, in their official capacities as agents and officers for the University of North Carolina, and those persons in active concert or participation with them be, and the same hereby are, ordered to procure an interpreter or other effective method of making orally delivered materials available to the plaintiff for his attendance of graduate courses at the Western Carolina University for the Fall, 1977 classes and the Winter, 1977–78 classes.

As a condition of such relief, plaintiff shall post a security bond in the amount of $3,000.00 pending the final outcome of this litigation pursuant to Rule 65(c), F.R.Civ.P.

IT IS FURTHER ORDERED that this action be stayed, and that as a condition of preliminary injunctive relief, the plaintiff is required to immediately initiate a complaint with the Department of Health, Education, and Welfare requesting the relief sought in this action, in accordance with the regulations issued to implement the Rehabilitation Act of 1973, as set out in 45 C.F.R. § 84.1 *et seq.*

IT IS FURTHER ORDERED that the plaintiff shall consider the advisability of adding the Secretary of Health, Education, and Welfare as a party to this action, or taking steps to request that he become a part of this action as amicus curiae. Therefore, the plaintiff shall forward a copy of this Order to the Secretary of Health, Education, and Welfare and report to the Court any communications received as result of taking such action.

## MAGISTRATE'S FINDINGS AND RECOMMENDATION

On July 18, 1977, this matter came before the Court on plaintiff's motion for a preliminary injunction. Plaintiff filed a complaint seeking declaratory and injunctive relief claiming that his rights were violated under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. The latter Act prohibits discrimination against handicapped persons by recipients of federal financial assistance. Jurisdiction was premised under 28 U.S.C. § 1343(3) and (4).

Plaintiff is a deaf-handicapped individual taking graduate courses at Western Carolina University, a part of the University of North Carolina. His complaint claimed that while attending the university as a student he was denied interpreter services. The defendants are the University of North Carolina and the Western Carolina University as well as the President of the University of North Carolina, the Chairman of the Board of Governors of the University of North Carolina, and the Chancellor of Western Carolina University. The individuals are sued in their individual and official capacities. Plaintiff claims that the policy and practice of the defendants violates the

Equal Protection Clause of the Fourteenth Amendment and the Rehabilitation Act of 1973. For relief, plaintiff seeks to enjoin defendants from enforcing the policy and practice which allegedly operates to deny plaintiff interpreter services. Further, plaintiff seeks an order requiring defendant to provide an interpreter service. Defendants answered admitting and denying certain portions of the complaint. Defendants assert that this Court is without jurisdiction over the subject matter and that the complaint fails to state a cause of action upon which relief can be granted. Defendants state that mandatory injunctive relief is barred by the Eleventh Amendment of the United States Constitution because they are agencies or officials of the State and have not given their consent to this action.

## FINDINGS OF FACT

Upon considering the testimony of the witnesses and the exhibits admitted into evidence, the Court makes the following findings of fact:

1. Plaintiff is a deaf graduate student at Western Carolina University, a constituent institution of the University of North Carolina, having enrolled in the graduate program in June of 1976.

2. The defendant University of North Carolina is a state-supported institution of higher education which receives federal financial assistance.

3. Defendant William C. Friday is president of the University of North Carolina and is responsible for the administration of the defendant University.

4. Defendant William A. Johnson is the chairman of the Board of Governors of the University of North Carolina which establishes the policy of the defendant University.

5. Defendant Harold F. Robinson is chancellor of Western Carolina University, a constituent institution of the University of North Carolina, and is the chief administrative officer of Western Carolina University.

6. Plaintiff is a handicapped individual as defined in 29 U.S.C. § 706(6):

. . . any person who (A) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (B) has a record of such an impairment, or (C) is regarded as having such an impairment.

7. Plaintiff is a qualified handicapped individual as defined in the Regulation to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, 45 C.F.R. 84.3(k)(3):

. . . with respect to postsecondary and vocational education services, a handicapped person who meets the academic and technical standards requisite to admission or participation in the recipient's education program or activity.

8. Plaintiff, in a letter dated December 29, 1976, to the defendant Robinson, requested Western Carolina University to provide interpreter services at university expense while plaintiff is a student in good standing at said University. Defendant Robinson replied indicating that the University had no money with which to meet plaintiff's request and further that "Section 504 Rehabilitation Act of 1973 has not as yet been promulgated." [sic] (implemented?)

9. Defendants to this date have not provided interpreter services to the Plaintiff while Plaintiff has been a student in good standing at said University.

10. Plaintiff is employed at the North Carolina School for the Deaf at Morganton, North Carolina. He earns a salary of approximately $10,500 per year. His employment is not contingent upon his supplementing his education. Plaintiff is taking courses at the University to obtain his master's degree in order to enhance his career opportunities in the field of education administration. He will complete his summer program at the University on August 5 of this year. He plans to take six (6) hours of graduate courses in the Fall and Winter quarters at Western Carolina University. These courses will be taken at night in order that he may work at his present job during the daytime.

11. Without a sign language interpreter, Plaintiff can only understand oral communication through lip reading with a 30% accuracy. If the teacher or the student does not directly face the Plaintiff, he cannot understand any oral communication whatsoever. He cannot make an oral presentation in class without an interpreter. Presently, Plaintiff has a friend who interprets some courses for him during the summer school session. Plaintiff is doing well academically and presently has a $B +$ average for the courses which he has taken.

12. Plaintiff has made an attempt to secure funds to pay for an interpreter from other sources but has been unsuccessful.

13. In the Spring of 1977, in response to an inquiry from the Dean of the Graduate School as how the program could be improved, plaintiff wrote concerning his need for an interpreter. However, plaintiff has not made an official request to defendant Robinson for an interpreter since his letter of December, 1976.

14. Plaintiff estimates that he will need an interpreter approximately ten (10) hours a week during the Fall and Winter sessions. He knows of two (2) persons in his area of the state who can interpret and estimates that they might charge $5.00 to $10.00 an hour. Mrs. Doris Hill, an interpreter certified by the North Carolina Registry of Interpreters, testified that she interprets for the deaf at Piedmont Community College and receives $768 per month for approximately 20–25 hours of work per week.

15. At present there are only nine (9) certified interpreters for the deaf in North Carolina. There are approximately 200 other individuals who identify themselves as interpreters. While certification is not necessarily essential for classroom interpretation, it is uncertain how many of these persons could provide adequate translating services without further training.

16. Plaintiff introduced the 1977 Summer School Catalog for Western Carolina University. On page 4 of that catalog (exhibit no. 5) the following statement appears:

NON–DISCRIMINATION POLICY

Western Carolina University is dedicated to equality of opportunity within its community. Accordingly, Western Carolina University does not practice or condone discrimination, in any form, against students, employees, or applicants on the grounds of race, color, national origin, religion, sex, age or handicap. Western Carolina University commits itself to positive action to secure equal opportunity regardless of those characteristics.

Western Carolina University supports the protections available to members of its community under all applicable Federal laws, including Titles VI and VII of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, Sections 799A and 845 of the Public Health Service Act, the Equal Pay and Age Discrimination Acts, the Rehabilitation Act of 1973, and Executive Order 11246.

17. On its own motion, the Court took notice of regulations issued to implement the Rehabilitation Act of 1973 and admitted such into evidence as Court's Exhibit No. 1. These regulations were issued Wednesday, May 4, 1977. The effective date is stated to be June 3, 1977.[1] The rules and regulations are found at 45 C.F.R. § 84.1, *et seq.*

In regard to postsecondary education, 45 C.F.R. § 84.44(d) provides:

*Auxiliary aids.* (1) A recipient to which this subpart applies shall take such steps as are necessary to ensure that no handicapped student is denied the benefits of, excluded from participation in, or otherwise subjected to discrimination under the education program or activity operated by the recipient because of the absence of educational auxiliary aids for students with impaired sensory, manual, or speaking skills.

---

1. Defendants argue that implementation of the Rehabilitation Act of 1973 will not be required until next year. This interpretation comes from 45 C.F.R. § 84.6(c). That section grants recipients of federal funds one year from the effective date (June 3, 1977) to evaluate their programs and modify those programs that are not in compliance with the regulations.

(2) Auxiliary aids may include taped texts, interpreters or other effective methods of making orally delivered materials available to students with hearing impairments, readers in libraries for students with visual impairments, classroom equipment adapted for use by students with manual impairments, and other similar services and actions. Recipients need not provide attendants, individually prescribed devices, readers for personal use or study, or other devices or services of a personal nature.

## CONCLUSIONS OF LAW

### I.

This case presents a problem in that the Congress of the United States has provided a right to handicapped individuals without explicitly defining the remedy. Section 504 of the Rehabilitation Act provides:

No otherwise qualified handicapped individual in the United States, as defined in Section 706(6) of this Title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C.A. § 794.

In Section 793, 29 U.S.C., Congress provided for enforcement of the Rehabilitation Act of 1973 against employers receiving money under federal contracts. Congress directed that an aggrieved individual should file a complaint with the Secretary of Labor, who would take appropriate action. However, Section 504 of the Rehabilitation Act provides no explicit enforcement mechanism for individuals such as plaintiff who are given rights under the Act to receive special treatment while attending institutions of higher education which receive federal funds.

Defendants therefore contend that plaintiff has no private cause of action arising from the Rehabilitation Act of 1973. Moreover, defendants claim that denying special treatment to handicapped individuals does not violate the Equal Protection Clause of the Fourteenth Amendment, and thus plaintiff states no cause of action under 42 U.S.C. § 1983.

Notwithstanding defendants' contentions, *Blackwelder Furn. Co., etc. v. Seilig Mfg. Co., Inc.,* 550 F.2d 189, 195 (4th Cir. 1977), holds that plaintiff is not required to make a strong showing that he is likely to succeed on the merits before a preliminary injunction becomes proper. Rather,

[T]he first step in a Rule 65(a) situation is for the court to balance the "likelihood" of irreparable harm to the plaintiff against the "likelihood" of harm to the defendant; and if a decided imbalance of hardship should appear in plaintiff's favor, then the likelihood-of-success test is displaced by Judge Jerome Frank's famous formulation:

[I]t will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation.

Under *Blackwelder* one would initially investigate the quality and quantum of harm to each side of the controversy in order to determine if an injunction should issue. However, it will be more profitable in this case to first determine whether the plaintiff has a probable right.

### II.

There is a growing body of case law indicating that handicapped individuals have a cause of action against arbitrary, unreasonable and discriminatory classifications. This right is said to lie in an individual's Fourteenth Amendment right to substantive due process as protected by 42 U.S.C. § 1983. Moreover, this same protection against arbitrary classification may also be found in Section 794 of the Rehabilitation Act of 1973 which states that "no otherwise qualified handicapped individual" shall be denied the right to participate in programs which are federally funded.

For example, in *Kampmeier v. Nyquist,* 553 F.2d 296 (2d Cir. 1977), an action was brought on behalf of a high school student

who wanted to participate in contact sports. The student had only one eye, and the school officials decided that her participation in such sports should not be permitted because of the danger involved. The court held that the student did have a private cause of action and standing to sue under 29 U.S.C. § 794. The court noted, however, that the Rehabilitation Act only prohibited exclusion of handicapped individuals who were "otherwise qualified." In view of the risks involved and in light of the fact that there were other non-contact sports available to plaintiff, the court upheld the district court's denial of preliminary injunction. The Second Circuit did not reach the test as to whether a handicapped classification was a suspect class and entitled to a strict scrutiny analysis under the Equal Protection Clause. *See also Davis v. Southeastern Community College*, 424 F.Supp. 1341 (E.D. N.C.1976), where the district court dismissed the action of a deaf individual seeking admission to a nursing program. The court denied relief after hearing evidence that a deaf individual could not carry out the necessary nursing duties because of her disability. Therefore the plaintiff was not an *otherwise qualified individual.*

In *Duran v. City of Tampa*, 430 F.Supp. 75 (M.D.Fla.1977), a police department refused to hire an individual with a history of epilepsy. · The court found that the regulation involved created an arbitrary and irrebuttable presumption against employability in violation of the Due Process Clause of the Fourteenth Amendment. The court further held plaintiff stated a cause of action under 29 U.S.C. §§ 793 and 794. It denied a grant of preliminary injunction stating that the mere loss of income or damage to reputation was not such an irreparable injury upon which a preliminary injunction could be predicated. In *Drennon v. Philadelphia General Hospital*, 428 F.Supp. 809 (E.D.Pa.1977), the court noted a probable cause of action under 42 U.S.C. § 1983 and 29 U.S.C. §§ 793 and 794 where a hospital allegedly denied employment opportunities to individuals solely because of a history of epilepsy. In *Gurmankin v. Costanzo*, 411 F.Supp. 982 (E.D.Pa.1976), *aff'd,*

556 F.2d 184 (3rd Cir. 1977), the court granted relief under 42 U.S.C. § 1983 where plaintiff brought suit challenging a school district's policy of excluding blind teachers from teaching sighted students. It also noted probable jurisdiction under 29 U.S.C. § 794.

The instant action does not fall within the above category of cases. Plaintiff has not been arbitrarily and unreasonably classified in such a manner so as to deny him access to the University's educational programs. To the contrary, the evidence indicates that this plaintiff has been permitted to attend classes. He has successfully completed some courses and has a high *B* average. This case does not involve a situation where the plaintiff has been classified to his detriment on the basis of his handicap. Rather, plaintiff's cause of action states that the University has an obligation not to ignore, but in fact to recognize his handicap, and to provide him special services not given to other students.

Courts have not been as consistent in applying an equal protection analysis to handicapped individuals. Thus, in *United Handicapped Federation v. Andre*, 409 F.Supp. 1297 (D.Minn.1976), the court found that the Rehabilitation Act of 1973 and 42 U.S.C. § 1983 did not provide a cause of action on behalf of wheelchair-handicapped individuals so as to require a metropolitan transit authority to provide specially equipped buses. *See Gurmankin v. Constanzo, supra,* 411 F.Supp. at 992 n. 8, where the court found a blind teacher protected under due process reasoning but expressly rejected the claim that blind persons constitute a suspect classification for equal protection purposes.

However, another line of cases does support plaintiff's contention that he has a private cause of action under the Rehabilitation Act of 1973. Thus in *Hairston v. Drosick*, 423 F.Supp. 180 (S.D.W.Va.1976), the court ruled that a handicapped school girl had a private cause of action under 29 U.S.C. § 794 and required the defendant to make necessary expenditures to enable her to attend school with non-handicapped chil-

dren. In *Sites v. McKenzie*, 423 F.Supp. 1190 (N.D.W.Va.1976), the court held that the Rehabilitation Act of 1973 forbade the exclusion of handicapped persons from a prison vocational rehabilitation program.

The most searching examination of whether a handicapped individual has a private cause of action under the Rehabilitation Act is found in *Lloyd v. Regional Transportation Authority*, 548 F.2d 1277 (7th Cir. 1977). In that case it was alleged that the transportation authority was contemplating purchasing new equipment, utilizing federal funds, without considering the needs of handicapped individuals. The court found that a private cause of action existed relying upon *Lau v. Nichols*, 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974). *Lau* was a class action comprising 28,000 school children of Chinese ancestry who claimed that they were denied the right to a meaningful education because of their not being able to speak English. The Supreme Court relied exclusively upon Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, to grant relief. The majority opinion noted that the Department of Health, Education and Welfare (hereinafter referred to as HEW) had enacted regulations and guidelines compelling the result and further that the school had contractually obligated itself to carry out those guidelines by receiving federal funds. In a concurring opinion, Justice Stewart noted that the defendants did not question the plaintiffs' standing to bring the action, as third-party beneficiaries of the contract. Justice Blackmun also concurred in the decision, and was joined by the Chief Justice. He emphasized that the case involved a large number of students and that the result might not be the same without the large number of persons involved.

The Seventh Circuit in *Lloyd*, relying upon the *Lau* decision, held that the Rehabilitation Act grants affirmative rights, derived from the then proposed regulations. (Final regulations have now been issued by HEW.) The court went on to hold, after examining the legislative history, that handicapped individuals have a *private cause of action* under the Rehabilitation Act to enforce those rights. The decision expressly recognized the fact that the regulations contemplate judicial review of administrative proceedings. (The regulations of the Rehabilitation Act are similar to the compliance provisions of Title VI of the Civil Rights Act of 1964. In both instances HEW has authority to review financial assistance programs to ensure voluntary compliance, and to deny or terminate funds after an administrative hearing.) Nevertheless, the court stated in *Lloyd*, 548 F.2d at 1286, that:

> While the above language contemplates judicial review of an administrative proceeding as contradistinct from an independent cause of action in federal court, still it is plain that the rights of the handicapped were meant to be enforced at some point through the vehicle of a private cause of action. When administrative remedial machinery does not exist to vindicate an affirmative right, there can be no objection to an independent cause of action in federal courts.

The instant case does not fit entirely within the reasoning of *Lloyd* which established a private cause of action under the Rehabilitation Act. There are no large numbers of handicapped individuals involved in this suit. However, since the University is now trying to identify handicapped individuals, a decision in this case may affect others. Thus, numerosity may be lurking in the background. Next, unlike *Lloyd*, the final regulations have been issued. Thus, effective administrative machinery may exist to vindicate plaintiff's rights. These facts counsel against finding to a private cause of action in this case based on the *Lloyd* and *Lau* decisions.

■ On the other hand, plaintiff has introduced the summer bulletin of the defendant University which indicates that it will comply with the Rehabilitation Act.[2] Thus, to the extent that both the *Lloyd* and

---

**2.** Further discovery may reveal that the defendant University has signed contracts specifically promising to comply with the Rehabilitation Act.

*Lau* decisions can be read to grant a cause of action based on contractual or third-party beneficiary theories, this plaintiff has made some initial showing of right to a private cause of action under the Rehabilitation Act. Also, courts have seen fit to grant a private cause of action under the Rehabilitation Act, at least to those plaintiffs vindicating denial of their due process rights. It is at least a serious question as to whether plaintiff has a private cause of action insofar as he seeks special benefits.[3]

### III.

■ Notwithstanding the authority indicating that plaintiff has a probable right to assert a private claim to affirmative action under the Rehabilitation Act, the Court deems it appropriate to consider the doctrines of primary jurisdiction and the concomitant question of exhaustion.[4] At the time of the *Lloyd* decision, HEW had not finally enacted regulations to enforce the Rehabilitation Act. The court noted that its decision might be different when those regulations went into effect. Thus, it stated at 1286 n. 29:

> We expressly leave open as premature the question whether, after consolidated procedural enforcement regulations are issued to implement Section 504, the judicial remedy available must be limited to post-administrative remedy judicial review. In any event, the private cause of action we imply today must continue at least in the form of judicial review of administrative action. And until effective enforcement regulations are promulgated, Section 504 in its present incarnation as an independent cause of action should not be subjugated to the doctrine of exhaustion. [citations omitted.] But assuming a meaningful administrative enforcement mechanism, the private

cause of action under Section 504 should be limited to a *posteriori* judicial review. *See also Drennon v. Philadelphia General Hospital, supra,* wherein the court using the doctrine of primary jurisdiction, stayed the action and remanded the claim to the Department of Labor; and *NAACP v. Wilmington Medical Center, Inc.,* 426 F.Supp. 919 (D.Del.1977).

■ The doctrine of primary jurisdiction adopts as its premise that, in order to properly integrate the functions of administrative agencies and the courts, consideration must be given to whether the administrative agency should initially pass on the controversy. *See Miss. Power and Light Co. v. United Gas Pipeline,* 532 F.2d 412, 417–19 (5th Cir. 1976). The doctrine has been applied even if "there is a basis for judicial action, independent of agency proceedings, [and] courts may route the threshold decision as to certain issues to the agency charged with primary responsibility for governmental supervision or control . . ." *Marine Terminal v. Rederi. Transatlantic,* 400 U.S. 62, 68, 91 S.Ct. 203, 208, 27 L.Ed.2d 203 (1970). As noted in *Miss. Power and Light Co. v. United Gas Pipeline, supra,* the Supreme Court has held that it is proper to ask for agency expertise even when an agency decision will only be a *material aid* in deciding an issue. Referrals to administrative agencies are appropriate if the agency could provide immunity to the defendant's actions or where the issues involve technical questions within the particular competence of the administrative agency, or an administrative decision would promote uniformity in regulation throughout the country. *Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643, 655 (1976).

The doctrine of exhaustion of administrative remedies involves questions akin to

---

**3.** As *Lloyd v. Regional Transp. Auth.,* 548 F.2d 1277, 1285 (7th Cir. 1977), recites, the legislative history of the 1974 amendments to the Rehabilitation Act had a purpose of broadening the affirmative obligations due handicapped persons under 29 U.S.C. §§ 793 and 794 so as to require affirmative action as well as to prohibit discrimination.

**4.** It is permissible for the Court to raise the issue of primary jurisdiction on its own motion. *Louisiana & Arkansas Ry. Co. v. Export Drum Co.,* 359 F.2d 311, 314 (5th Cir. 1966); *Nader v. Allegheny Airlines, Inc.,* 167 U.S.App.D.C. 350, 375, 512 F.2d 527, 542 (1975), *rev'd on other grounds,* 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976).

ripeness, *i. e.*, at which stage in the proceedings may judicial review be sought. As stated in Davis, *Administrative Law of the Seventies* 446 (1976):

> According to the holdings, exhaustion of administrative remedies is sometimes required for getting judicial review and sometimes not. The common judicial statement that one must exhaust administrative remedies before going to court is false almost as often as it is true. Even though courts seldom talk in terms of judicial discretion to require or not to require exhaustion, the reality often is that the determinations are highly discretionary. Yet sometimes the answer is predictable, as it is when exhaustion will cause irreparable injury and when the question is one of law beyond the agency's expertise and when the agency is clearly without jurisdiction, or when the agency clearly has jurisdiction and its prior determination will assist the court in making its own decision. But when the relevant considerations pull against each other, predicting is difficult or impossible.

Thus, the question must be answered as to whether there is any room in this case for agency action. If there is, then the Court must consider whether the doctrines of primary jurisdiction or exhaustion require the agency to hear the matter.

■ In the instant case, plaintiff alleges he has a private cause of action under the Rehabilitation Act. That question would not be more appropriate for an agency to initially decide than the Court. However, plaintiff in seeking to implement the Rehabilitation Act regulations seeks a remedy enforceable by the administrative agency.[5] Thus, by requiring initial referral of this matter to HEW, the Court preserves the administrative machinery created to effec-tuate the Rehabilitation Act. Enforcement of the Act is enhanced in that relief might encompass whole institutions rather than a single individual. Moreover, to the extent the administrative agency resolves the issues, court resources are conserved.

Since referral of this controversy to the administrative agency would be helpful to the Court, does plaintiff have an adequate remedy? In *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), the court held that neither the principle of exhaustion of administrative remedies nor the doctrine of primary jurisdiction had any application in a case where welfare recipients alleged that state welfare programs were not in compliance with HEW requirements.[6] The ruling resulted from the fact that plaintiffs did not seek review of an administrative order and the regulations did not permit them to trigger or participate in HEW review of state welfare programs. In contrast to *Rosado*, which provided no means for recipient review, are the regulations discussed in *Gordon v. Forsyth County Hospital Authority, Inc.*, 409 F.Supp. 708 (M.D.N.C.1976). In *Gordon*, individuals challenged a hospital's compliance with the Hill-Burton Act, 42 U.S.C. § 291 *et seq.* The court distinguished *Rosado v. Wyman, supra*, on the basis of newly enacted legislation which permitted an individual action should the officials charged with administering the Act not take effective steps after the individual had filed a complaint. The individuals were required to exhaust their administrative remedies prior to seeking judicial relief.

■ Turning to the instant case, the availability of participant review falls between extremes found in *Rosado* and *Gordon*. In issuing regulations for the Rehabilitation Act of 1973, HEW has engrafted the enforcement provisions applicable to Title

---

5. Agency interpretation may be helpful to decide defendants' argument that 45 C.F.R. § 84.6 gives it a one-year grace period. Also it may aid in deciding the meaning of: "interpreters or *other effective methods* of making orally delivered materials available to students with hearing impairments." 45 C.F.R. § 84.44(d)(2). (Emphasis added.)

6. Nevertheless, the court noted that a federal court need not deprive itself of the expertise of a federal administrative agency primarily concerned with the problems. However, the district court had tried, without success, to obtain input from HEW.

VI (45 C.F.R. §§ 80.6–80.10 and Part 81.) Those enforcement provisions provide that any person believing himself to be the object of discrimination can file a complaint (45 C.F.R. § 80.7). An investigation can be commenced and a hearing may be obtained. While a complainant may not be a party to the proceeding, he can petition to become involved in the controversy as amicus curiae. (45 C.F.R. § 81.23.) Thus, unlike *Rosado, supra,* a handicapped individual can trigger and participate in a review of an institution's alleged non-compliance with the Rehabilitation Act. While this power is not as great as that of the Hill-Burton recipient in *Gordon, supra,* nevertheless, it is sufficient to create a substantial question calling for the staying of this action under the primary jurisdiction doctrine, and requiring plaintiff to file a complaint with HEW. At the minimum, it cannot be said at this time that the exceptions to the application of that administrative principle are present, *i. e.,* that submitting the matter to the administrative agency would be futile or inordinately expensive or time-consuming.[7]

### IV.

The fact that this Court invokes the doctrine of primary jurisdiction does not moot the question of whether preliminary relief should issue to safeguard plaintiff's rights from irreparable injury pending administrative determination. *See Natural Resources Defense Council, Inc. v. Train,* 166 U.S.App. D.C. 312, 323, 510 F.2d 692, 703 n. 59 (1975); *Monsanto Company v. FPC,* 149 U.S.App.

D.C. 396, 463 F.2d 799 (1972); *see also United States v. Virginia Elec. and Power Co.,* 412 F.Supp. 165 (E.D.N.C.1976).

Mandatory injunctions should be used sparingly. 7 *Moore's Federal Practice* ¶ 65.04[1], 65–35—65–38 (2d ed. 1975). Moreover, an injunction should not work so as to give a party the full relief which he seeks on the merits, especially when the order would require the payment of money. *Dorfmann v. Boozer,* 134 U.S.App.D.C. 272, 277, 414 F.2d 1168, 1173 (1969). Notwithstanding, it would appear that in a case where a party requests a mandatory preliminary injunction, the test is still one of balancing the competing interests. *Ross v. Community Services, Inc.,* 396 F.Supp. 278, 288 (D.Md.1975).

In *Barnes v. Converse College,* 436 F.Supp. 635 (D.S.C.1977), Judge Hemphill granted preliminary injunctive relief to a plaintiff similarly situated as the one in this case. Judge Hemphill found that the plaintiff had a probable right to a private cause of action under the Rehabilitation Act although he did not discuss the effect, if any, of primary jurisdiction or exhaustion. In *Barnes,* the deaf plaintiff maintained that her continuing employment as a teacher was dependent upon her receiving six (6) semester hours of college credit before the beginning of the school year in September. In the instant case, plaintiff's seeking of graduate educational credits is of less pressing concern. He presently is employed and is not in danger of losing his job. Moreover, the instant plaintiff has been pursuing his educational endeavors with a large de-

---

7. Since plaintiff also alleges a violation of 42 U.S.C. § 1983, it might be argued that referral to HEW is inappropriate. However, the general rule that a 1983 claimant need not exhaust *state* administrative remedies (*Wilwording v. Swenson,* 404 U.S. 249, 251, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971)) does not speak to exhausting federal administrative remedies.

Plaintiff's claim under 1983 is considerably weaker than the one involving the Rehabilitation Act. Thus an examination, and perhaps resolution, of the Rehabilitation Act allegation, prior to consideration of the 1983 claim promotes orderly judicial functioning. Also the doctrine of primary jurisdiction may be appropriately invoked even if plaintiff has an addi-

tional or concurrent, private remedy under the Rehabilitation Act or Section 1983. *See Drennon v. Philadelphia General Hospital,* 428 F.Supp. 809, 816–18 (E.D.Pa.1977).

Because of the unsettled controversy as to whether plaintiff has an independent private cause of action under the Rehabilitation Act or Section 1983, the Court does not decide at this time if the case should be dismissed pending exhaustion of administrative remedies. Further factual or legal developments in this case could change that decision. Moreover, staying this action, rather than dismissing it, has a certain equitable appeal based on the facts of this particular case. *See* footnote 8, *infra.*

gree of success. However, this does not minimize the benefits flowing to plaintiff by his being able to participate fully in classroom discussion with the aid of an interpreter.

Plaintiff did not testify that he was unable to afford a classroom interpreter. In reviewing the financial data supplied to the Court concerning the expense of providing an interpreter, it would appear the cost for a Fall and Winter term would range from $1,000 to $3,000 depending upon the hours needed for, and the rate charged by, an interpreter. Considering plaintiff's salary, at some point in time it would be a financial hardship for him to provide his own interpreter. This burden must be juxtaposed against that imposed on the defendants. The Court has before it no information as to the amount of federal financial aid received by the University of North Carolina nor whether the University has received special funding for handicapped programs. Nevertheless, the Court has no doubt that the University would be better able to pay the costs. In so stating, the Court in no way minimizes the tremendous burden which might be imposed upon the University in fully implementing the regulations issued under the Rehabilitation Act.

■■■■ In measuring the irreparability of harm to a plaintiff seeking preliminary injunctive relief, *Blackwelder Furn. Co., etc. v. Seilig Mfg. Co., Inc., supra,* at 196, requires assessment of the costs to defendant. If the cost is minimal, the threatened injury may be all the more irreparable. In evaluating the cost to the defendant, the Court notes that plaintiff has made a strong showing of having a probable right. Indeed, defendant does not question the right so much as how or when that right is to be enforced. Judged in that light, the real cost to defendant of providing an auxiliary aid to this plaintiff might well be zero. Moreover, in considering the final factor relevant in considering preliminary injunctive relief, the Court notes that the public interest lies on the side of plaintiff. Congress has enacted the Rehabilitation Act of 1973, and HEW has formulated regulations which indicate that plaintiff has the right (at some time) to receive that which he seeks in the complaint. While injunctive relief in this particular case does not preserve the status quo, the mandatory injunctive relief does serve to enforce the federal statutes and regulations under which plaintiff has a probable right to protection.[8]

THEREFORE, IT IS RECOMMENDED that a preliminary injunction issue as to the individual defendants, in their official capacities, to procure an interpreter or other effective method of making orally delivered materials available to the plaintiff for his attendance of graduate courses at the Western Carolina University for the Fall, 1977 classes and the Winter, 1977–78 classes. As a condition of such relief, plaintiff shall post a security bond in the amount of $3,000 pending the final outcome of this litigation pursuant to Rule 65(c), F.R.Civ.P.

IT IS FURTHER RECOMMENDED that this action be stayed, and that as a condition of preliminary injunctive relief, plaintiff be required to initiate a complaint with HEW requesting the relief sought in this action. Furthermore, plaintiff shall consider the advisability of adding the Secre-

---

8. In recommending issuance of an injunction, the Court notes that plaintiff filed his action prior to the issuance of the regulations. Thus, he had no opportunity to pursue administrative remedies. The regulations were issued some three (3) to four (4) years after the Rehabilitation Act was enacted. As previously quoted, *Lloyd v. Regional Transportation Authority,* 548 F.2d 1277 (7th Cir. 1977), indicates that after regulations are issued providing for enforcement of the Act, a party may have to exhaust his administrative remedies. For suits brought after the effective date of the regulations, the advice might well be a requirement.

Defendants' claim that an injunction is barred by the Eleventh Amendment is rejected. The proposed relief is in the form of prospective injunctive relief, not an award of money damages, *Milliken v. Bradley (Milliken II),* —— U.S. ——, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977), and thus would not be barred by the Eleventh Amendment. Therefore the Court does not decide if defendants may have waived the protection of the Eleventh Amendment by accepting federal funds.

tary of Health, Education and Welfare as a party, or taking steps to request that he become a part of this action as amicus curiae.

August 31, 1977

(s) Russell A. Eliason
United States Magistrate