Jane DOE, Plaintiff,

v.

NEW YORK UNIVERSITY, John Sawhill, Individually and as President of New York University, Ivan Bennett, M. D., Individually and as Dean of New York University School of Medicine, Jacobus Potter, Individually and as Associate Dean of New York University School of Medicine, David S. Scotch, Individually and as Dean of Students of New York University School of Medicine, Defendants.

No. 77 Civ. 6285 (GLG).

United States District Court, S. D. New York.

Jan. 3, 1978.

Christopher Hansen, Robert Levy, New York Civil Liberties Union, New York City, for plaintiff.

S. Andrew Schaffer, Robert P. Walton, New York City, for defendants.

## MEMORANDUM OPINION

GOETTEL, District Judge.

Plaintiff seeks a temporary restraining order and a preliminary injunction, under section 504 of the Rehabilitation Act, 29 U.S.C. § 794, compelling the New York University Medical School to readmit her as a student. Argument on the motion was held on December 30, 1977. Briefly stated, plaintiff's claim is that the school has illegally discriminated against her on the basis of her handicap, a mental disability which caused her to take a leave of absence from the school in January of 1976. She argues that through psychiatric treatment she has regained sufficient emotional stability to return to school, and that the school's refusal to readmit her is a violation of section 504, which forbids discrimination against a handicapped person "otherwise qualified" for admission.

Defendants argue, *inter alia*,[1] that the plaintiff cannot bring this private action under section 504 without first exhausting new administrative remedies designed to investigate such complaints of discrimination. Plaintiff cites several cases as authority for a private right of action under the statute.

In *Lloyd v. Regional Transportation Authority*, 548 F.2d 1277 (7th Cir. 1977), the

---

1. Defendants also assert that the plaintiff is not a "handicapped" person within the meaning of section 504, and that she is not "otherwise qualified" within the meaning of the statute. As a result, they dispute her likelihood of suc-

cess on the merits. Defendants also make a strong argument that the balance of hardships does not tip in plaintiff's favor on this motion for preliminary relief.

court upheld a private right of action under section 504, but with a significant caveat. Concluding that the rights of the handicapped were meant to be enforced "at some point through the vehicle of a private cause of action," the court expressly limited its holding:

"We expressly leave open as premature the question whether, after consolidated procedural enforcement regulations are issued to implement Section 504, the judicial remedy available must be limited to post-administrative remedy judicial review. In any event, the private cause of action we imply today must continue at least in the form of judicial review of administrative action. And until effective enforcement regulations are promulgated, Section 504 in its present incarnation as an independent cause of action should not be subjugated to the doctrine of exhaustion. [Citations omitted]. But assuming a meaningful administrative enforcement mechanism, the private cause of action under Section 504 should be limited to *a posteriori* judicial review."

548 F.2d at 1286 n. 29.

On April 15, 1977, the Second Circuit, in *Kampmeier v. Nyquist*, 553 F.2d 296 (2d Cir. 1977), followed the logic of *Lloyd*, and found it "probable" that a private right of action existed, but expressed no more than a general approval of the right under the *Lloyd* analysis. *Id.* at 299. *See also Barnes v. Converse College*, 436 F.Supp. 635, 638 (D.S.C.1977); *Rogers v. Frito-Lay, Inc.*, 433 F.Supp. 200, 203–04 (N.D.Tex.1977) (both cases upholding private right and citing *Lloyd*).

On April 28, 1977, the Department of Health, Education and Welfare (HEW) issued comprehensive regulations interpreting the Rehabilitation Act and providing the usual enforcement machinery under the auspices of the Department's Office of Civil Rights. *See* 42 Fed.Reg. 22676–22685 (May 4, 1977) (45 C.F.R. §§ 84.1 *et seq.*). The regulations became effective on June 3, 1977.[2] At the request of this Court, the parties have investigated the present status of the administrative remedies available to the plaintiff and, after inquiry of the Acting Deputy Director of the Regional Office of Civil Rights of HEW, have stipulated that individual complaints of discrimination against the handicapped are now being processed through that office. A complaint like the plaintiff's would be investigated by the office's section on higher education, which also handles cases under the Civil Rights Act applying to discrimination based on race and sex.

It is clear, then, that administrative remedies exist to handle this plaintiff's complaint, and that the most authoritative court to analyze the issue whether a private right exists under section 504 concluded that when such administrative machinery did come into being, any private right under the statute would be subject to the requirement that such administrative remedies must be exhausted before a plaintiff can obtain judicial review of his complaint. Although the Court is not overly optimistic as to the expeditiousness or efficiency of such a scheme of administrative enforcement, particularly when it appears that HEW's enforcement machinery in other areas of civil rights complaints is inefficacious, at best,[3] it is simply too early to find this specific administrative remedy inadequate.

On paper, it now appears that, in the words of the Seventh Circuit in *Lloyd, supra*, "meaningful administrative enforcement" is available for complaints under section 504. HEW must be given at least the opportunity to develop an efficient and sensitive mechanism to deal with complaints of discrimination brought by handicapped persons before a court can make a reasoned

---

**2.** HEW specifically considered the question whether a private right of action exists under section 504, but determined that it was not within the power of the Department to grant one by administrative regulation. Regulations, App. A, No. 8, 42 Fed.Reg. at 22687.

**3.** *But see* N.Y. Times, Dec. 30, 1977, § A, at A9, col. 4, indicating that an effort will be made to clear up the backlog.

evaluation of such a mechanism's adequacy. Especially in the context of a relatively new and broadly-worded statute like the one in question here, which could flood the courts with new litigation, administrative interpretation and guidance may be an important element in the developing construction and application of the law. Moreover, since it appears that the central issue in this case will be whether the plaintiff is currently "otherwise qualified" to attend medical school, (i. e., whether she is now sufficiently emotionally stable, or has made sufficient therapeutic progress to overcome her previous and substantial mental instability), the resolution of the case will depend on a critical and expert evaluation of psychiatric examinations, as well as the threshold question of whether a person so afflicted is "handicapped" within the meaning of the statute. It is not clear that a court would be the most appropriate forum to undertake such a determination in the first instance. Further, it is not unreasonable to conclude that HEW could bring a greater degree of flexibility and expertise to bear on these issues. Of course, if HEW does not or cannot provide an effective remedy, a decision to bypass the administrative machinery would rest on a substantial ground.

Plaintiff also cites *Crawford v. University of North Carolina*, 440 F.Supp. 1047 (M.D.N.C.1977), where the court issued a preliminary injunction but stayed the action pending the filing of a complaint with HEW. This Court does not agree that such would be a proper manner in which to proceed in this case. First, there is no showing here, nor could there be, that HEW has been dilatory in providing this plaintiff with remedial assistance. Second, *Crawford* involved relatively simply issues (provision of a sign language interpreter to an enrolled deaf student), and the balance of hardships tipped decidedly in favor of the plaintiff in that case. Here, defendants have made a strong showing that compelling them to readmit a student who might suffer from a substantial emotional disability could pose a danger not only to the plaintiff and her fellow students, but also to patients with whom first-year medical students come into regular contact. On the other hand, the failure to compel readmission now will result in at worst only a year's further delay in plaintiff's medical education, from which she has already been absent for two years.[4] Further, the plaintiff is currently enrolled in a degree program at Harvard University which she would have to leave in order to attend classes at New York University. Her showing of irreparable injury is not sufficient to support the granting of preliminary relief pending administrative adjudication of her complaint. Under these circumstances, the Court does not find it advisable to alter the status quo pending HEW's consideration of the case.

For these reasons, the plaintiff's motion for a temporary restraining order must be denied for failure to exhaust administrative remedies. Because this ground of decision also implicates the motion for a preliminary injunction, and the facts of the existing administrative enforcement remedies are not in dispute, a hearing on that motion is unnecessary. Therefore, the motion for a preliminary injunction is also denied on the same ground.

Plaintiff has also requested that the court file in this action be sealed, and the Court grants this request.

SO ORDERED.

---

4. The plaintiff has completed a fall term of the first year and, in order to resume where she left off, she would have to begin again in January.