558 F.2d 413
 UNITED HANDICAPPED FEDERATION, a Minnesota Non-Profit
Corporation, et al., Appellants,
v.
Camille D. ANDRE, Individually and in his official capacity
as Chief Administrator of Metropolitan Transit
Commission, et al., Appellees.
 No. 76-1369.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 15, 1977.
Decided June 21, 1977.
Rehearing Denied Aug. 15, 1977.
 
 William M. Mahlum, St. Paul, Minn., for appellants; Marilyn B. Knudsen, St. Paul, Minn., on brief.
 Edward J. Pluimer, Minneapolis, Minn., for appellee, AM General Corp.; David A. Ranheim of Dorsey, Windhorst, Hannaford, Whitney & Halladay, Minneapolis, Minn., on brief.
 John M. Lee, Asst. U. S. Atty., Minneapolis, Minn., for Federal appellees; Robert G. Renner, U. S. Atty., Minneapolis, Minn., and Robert W. Batchelder, Acting Asst. Chief Counsel, and Glenn F. Wasserman, Atty. Advisor, of Urban Mass Transportation Administration, Washington, D. C., on brief.
 David S. Doty, Minneapolis, Minn., for appellee, Metropolitan Transit Commission; James R. Steilen, Minneapolis, Minn., on brief.
 Before LAY and STEPHENSON, Circuit Judges, and SMITH,* Senior District Judge.
 LAY, Circuit Judge.
 
 
 1
 This is a civil action brought by the United Handicapped Federation, the National Paraplegia Foundation, and six mobility handicapped individuals against officials of the Metropolitan Transit Commission (MTC), the Secretary of the United States Department of Transportation, the Administrator of the Urban Mass Transportation Administration (UMTA), and the AM General Corporation. The complaint alleges that the defendants failed to make urban mass transit equipment purchased with federal financial aid fully accessible to all handicapped persons. Plaintiffs allege that the defendants have violated the Fourteenth Amendment to the United States Constitution, § 504 of the Rehabilitation Act of 1973,[1] § 16(a) of the Urban Mass Transportation Act of 1964 as amended,[2] §§ 105(a) and (b) of the Federal-Aid Highway Amendments of 1974,[3] § 315 of the Department of Transportation and Related Agencies Appropriations Act of 1975,[4] Minn.Stat.Ann. Ch. 256C, and 42 U.S.C. §§ 1983 and 1985(3).
 
 
 2
 Plaintiffs originally sought preliminary injunctive relief to restrain MTC and UMTA[5] from the purchase of 338 standard size buses which were to be used in a seven-county metropolitan area and which were not equipped to transport passengers confined to wheelchairs. The district court denied a preliminary injunction and the buses were subsequently delivered and payment made. The plaintiffs continued to seek declaratory and other injunctive relief.
 
 
 3
 On March 11, 1976, the district court, the Honorable Donald D. Alsop, granted defendants' motion for summary judgment, ruling that none of the statutes relied on by plaintiffs required that every standard size bus purchased with federal assistance be specially equipped to transport passengers confined to wheel chairs.[6] He further held that defendants had made "special efforts" to aid the elderly and handicapped in utilization of the mass transportation system. Finding no violations of the statutes or of the Constitution, the district court stated:
 
 
 4
 UMTA has, in accordance with the mandate of Congress pursuant to the Urban Mass Transportation (UMT) Act of 1964, as amended, 49 U.S.C. § 1601 et seq., carried on extensive research, planning, and design of mass transportation services and facilities to provide for effective utilization of mass transportation by the elderly and physically handicapped. Included in these efforts are the ongoing research and development of facilities and services, approval of grants for the purchase of vans and small buses equipped to meet the needs of the elderly and handicapped, development of the "TRANSBUS," publication of Notice of Rulemaking, and a requirement in grant approvals that the elderly and handicapped be charged reduced rates during non-peak hours.
 
 
 5
 United Handicapped Federation v. Andre, 409 F.Supp. 1297, 1299 (D.Minn.1976).[7]
 
 
 6
 Although Judge Alsop found that defendants were in full compliance with the "special efforts" requirements under the laws, we note that his decision was rendered prior to the issuance of UMTA regulations, in part under the authority of § 504.
 
 
 7
 Judge Alsop's opinion does not discuss whether the plaintiffs have any standing to bring a private claim for relief or whether any of the statutes place affirmative duties on the defendants. We assume the district court felt it did not have to pass on these issues since, in any event, it found that defendants had complied with the statutes.
 
 
 8
 In Lloyd v. Illinois Regional Transp. Authority, No. 75-C-1834 (N.D.Ill., filed Mar. 16, 1976), rev'd, 548 F.2d 1277 (7th Cir., 1977), the district court granted defendant's motion for summary judgment under a complaint similar to the one filed here. The Seventh Circuit reversed finding that § 504[8] did place affirmative duties on the mass public transportation systems in that region, and that plaintiffs (who were defined as a class of mobility disabled persons in the northeastern region of Illinois) had standing to seek declaratory and injunctive relief under § 504 and regulations. See Lloyd v. Regional Transp. Authority, 548 F.2d 1277 (7th Cir., 1977).
 
 
 9
 Although the postures at the time of appeal of the Lloyd case and the present one appear different (in Lloyd the district court dismissed the complaint for failure to state a claim for relief; here the district court granted summary judgment on the merits), they are parallel in that all plaintiffs are denied relief. In one sense, the district court's action here is more final than in Lloyd since no further relief can be forthcoming. After reviewing the Seventh Circuit's reversal in the Lloyd case we find we must remand to the district court for reconsideration of defendants' duties under the statutes and administrative regulations and guidelines.
 
 
 10
 We adhere to the reasoning of Judge Cummings in his excellent analysis in the Lloyd appeal, and find that § 504 does create an affirmative duty on the part of these defendants. We also agree that plaintiffs do have standing to bring a private cause of action.
 
 
 11
 Subsequent to the district court's decision, regulations and accompanying guidelines were promulgated and became effective May 31, 1976. See 49 C.F.R. 609.1-609.25 and 613.204. One regulation provides that the UMTA administrator will grant project approvals only if:
 
 
 12
 (a) The urban transportation planning process exhibits satisfactory special efforts in planning public mass transportation facilities and services that can be utilized by elderly and handicapped persons; and
 
 
 13
 (b) The annual element of the transportation improvement program developed pursuant to 23 CFR 450.118 and submitted after September 30, 1976, contains projects or project elements designed to benefit elderly and handicapped persons, specifically including wheelchair users and those with semi-ambulatory capabilities ; and
 
 
 14
 (c) After September 30, 1977, reasonable progress has been demonstrated in implementing previously programmed projects.
 
 
 15
 49 C.F.R. § 613.204 (emphasis added).
 
 
 16
 Guidance on the meaning of special efforts in planning is set forth in 23 C.F.R. Part 450, Subpart A, issued simultaneously with the above regulations:The urban transportation planning process must include special efforts to plan public mass transportation facilities and service that can effectively be utilized by elderly and handicapped persons. As used in this guidance, the term "special efforts" refers both to service for elderly and handicapped persons in general and specifically to service for wheelchair users and semiambulatory persons. With regard to transportation for wheelchair users and others who cannot negotiate steps, "special efforts" in planning means genuine, good-faith progress in planning service for wheelchair users and semiambulatory handicapped persons that is reasonable by comparison with the service provided to the general public and that meets a significant fraction of the actual transportation needs of such persons within a reasonable time period.
 
 
 17
 (Emphasis added).
 
 
 18
 Examples of what affirmative duties will satisfy "special efforts" requirements are given in 49 C.F.R. Part 613, Subpart B.[9] In addition to these positive examples, proposed regulations of the Health, Education, and Welfare Department indicate what recipients of federal assistance may not do. See 45 C.F.R. § 84.4.[10]
 
 
 19
 On the basis of the record before the district court, if it were not for the subsequent promulgation of the administrative guidelines and regulations, we would agree with the district court's result. However, we feel that the denial of relief to the plaintiffs cannot be justified in light of these recent definitions and guidelines. Although the buses in question here have been purchased and placed in service, because of the recent developments the defendants now have the burden to take affirmative action to conform to the regulations and guidelines. It is difficult to assess the record and the statutes in any other light.[11]
 
 
 20
 Under the circumstances we vacate the grant of summary judgment and remand to the district court for further proceedings. The district court, upon receiving further evidence, should reappraise defendants' compliance with the statutes, regulations and guidelines, and fashion whatever equitable relief it deems necessary.
 
 
 
 *
 TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation
 
 
 [1]
 29 U.S.C. § 794
 
 
 [2]
 49 U.S.C. § 1612
 
 
 [3]
 Pub.L. No. 93-643, 88 Stat. 2282
 
 
 [4]
 Pub.L. No. 93-391, 88 Stat. 781
 
 
 [5]
 UMTA was to contribute 80 per cent of the funding for the buses
 
 
 [6]
 At the time of the district court's opinion several other suits seeking the same or similar relief had been brought or were pending in other district courts. See, e. g., Webb v. Miami Valley Regional Transit Authority, Civ. No. C-3-75-67, (S.D.Ohio Jan. 19, 1976); Lloyd v. Illinois Regional Transp. Authority, No. 75-C-1834 (N.D.Ill., filed Mar. 16, 1976), rev'd, 548 F.2d 1277 (7th Cir., 1977); and Snowden v. Birmingham-Jefferson County Transit Authority, 407 F.Supp. 394 (N.D.Ala.1975), aff'd, 551 F.2d 862 (5th Cir., 1977)
 
 
 [7]
 The Urban Mass Transportation Act of 1964, as amended, declares it to be a national policy that:
 (E)lderly and handicapped persons have the same right as other persons to utilize mass transportation facilities and services; that special efforts shall be made in the planning and design of mass transportation facilities and services so that the availability to elderly and handicapped persons of mass transportation which they can effectively utilize will be assured; and that all Federal programs offering assistance in the field of mass transportation (including the programs under this chapter) should contain provisions implementing this policy.
 49 U.S.C. § 1612.
 
 
 [8]
 Section 504 of the Rehabilitation Act of 1973 provides:
 No otherwise qualified handicapped individual in the United States, . . . shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.
 29 U.S.C. § 794.
 
 
 [9]
 One example of a level of effort that will be deemed to satisfy the "special efforts" requirement is:
 Purchase of only wheelchair-accessible new fixed route equipment until one-half of the fleet is accessible, or, in the alternative, provision of a substitute service that would provide comparable coverage and service levels.
 
 
 [49]
 C.F.R. Part 613, Subpart B (Appendix)
 
 
 [10]
 Under the proposed Health, Education, and Welfare Department regulations a federal assistance recipient could not, for example:
 Provide a qualified handicapped person with aid, benefit, or service which is not as effective as that provided to others; (or)
 Otherwise limit a qualified handicapped person in the enjoyment of any right, privilege, advantage or opportunity enjoyed by others receiving an aid, benefit or service.
 
 
 [45]
 C.F.R. § 84.4(b)(1)(ii) and (iv)
 Moreover § 84.4(b)(2) would establish that:
 A recipient may not provide different or separate aid, benefits or services to handicapped persons unless such action is necessary to provide qualified handicapped persons with aid, benefits, or services which are as effective as those provided to others.
 
 
 [11]
 On May 19, 1977, Brock Adams, the Secretary of Transportation, issued a decision mandating the use of a low-floor, ramped bus, "Transbus," by all local transit authorities seeking federal assistance for the purchase of standard-size mass transit buses, after September 30, 1979. In the interim the present policy on accessibility for the elderly and handicapped contained in the statutes, guidelines and regulations is to continue. Adams stated:
 (M)anufacturers must continue to offer optional wheelchair lifts, and local transit authorities must either purchase buses with lifts or provide special services for elderly and handicapped passengers.