**Cheryl SHERER et al., Plaintiffs,**

v.

**Raymond D. WAIER, Superintendent of Schools, North Kansas City School District, et al., Defendants.**

**No. 77–0594–CV–W–4.**

United States District Court, W. D. Missouri, W. D.

Nov. 2, 1977.

As Amended June 12, 1978.

**1040**

Millard F. Aldridge, Kansas City, Mo., for plaintiffs.

Randall E. Hendricks, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER

ELMO B. HUNTER, District Judge.

This is a civil action brought by Cheryl and Wayne Sherer, individually and on behalf of their infant daughter, Kimber Sherer, for declaratory and injunctive relief and money damages against officials of the North Kansas City, Missouri, School District. Plaintiffs seek an Order of this Court compelling defendants to provide intermittent catheterization services to plaintiff Kimber Sherer, which they allege are necessary for her to benefit fully from her education. In addition, plaintiffs seek to prevent defendants from segregating Kimber Sherer in a special school for the orthopaedically handicapped and to compel defendants to place her in a regular classroom for instruction with normal children. Plaintiffs also seek compensatory damages for the alleged deprivation of the rights of plaintiff Kimber Sherer, and for the loss of income of plaintiff Cheryl Sherer allegedly necessitated by her performance of services that allegedly were the responsibility of defendants.

Plaintiffs allege that they are seeking to enforce rights guaranteed by the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution, and by the Rehabilitation Act of 1973, 29 U.S.C. § 794. Jurisdiction is alleged under 28 U.S.C. § 1331(a), 28 U.S.C. § 1343(3) and (4), 28 U.S.C. § 2201 and § 2202, and 42 U.S.C. § 1983.

The facts alleged in the complaint are as follows. Plaintiffs all are residents of the North Kansas City, Missouri, School District. Plaintiff Kimber Sherer is eight years old and the infant child of plaintiffs Cheryl and Wayne Sherer. Defendants are the Superintendent, Director of Pupil Services, and Board of Education members of the North Kansas City School District, and the principal of the Briarcliff Elementary School.

Plaintiff Kimber Sherer suffers from a physical condition known as spina bifida, commonly known as "open spine." The complaint alleges that she is mentally competent to attend regular public schools, but because of her physical handicap she was enrolled in the fall of 1975 in the Briarcliff Elementary School in a program for the orthopaedically handicapped. In order to effectively drain her bladder, which is medically necessary to preserve her kidney function, plaintiff Kimber Sherer was placed in October 1975 on a program of intermittent catheterization of the bladder.

In the fall of 1976, the plaintiff parents were advised by their daughter's physicians that it was mandatory for Kimber to be catheterized at least once a day during school hours. Plaintiffs then contacted defendant Johnson, Director of Pupil Services, and requested that the teacher, aide, or school nurse catheterize Kimber Sherer at school. According to the complaint, defendant Johnson denied plaintiffs' request. Plaintiffs then allegedly requested that the North Kansas City School Board consider the matter. The complaint alleges, on information and belief, that the matter was discussed by the School Board in a closed session in December 1976, in the absence of plaintiffs. Thereafter, the School Board allegedly advised plaintiffs that "as a solution to this problem, the School District would provide homebound instruction" for Kimber Sherer.

Because homebound instruction was unacceptable to plaintiffs, plaintiff Cheryl Sherer quit her job so that she could attend on a daily basis to the catheterization needs of her daughter at Briarcliff Elementary School. Cheryl Sherer continued the daily catheterization throughout the remainder of the school year which ended in May 1977, despite loss of income and the inconvenience of travelling to the school.

Defendants have continued to refuse to provide daily catheterization services to Kimber Sherer, according to plaintiffs' complaint, and "are unwilling to discuss this matter any further." Plaintiff Cheryl Sherer no longer is able to provide this service to her daughter, yet without her mother's services, plaintiff Kimber Sherer allegedly will be excluded from attending public school.

Although the complaint has subdivided them into more numerous categories without benefit of separate counts, plaintiffs essentially assert four causes of action herein. First, plaintiffs assert that by segregating plaintiff Kimber Sherer in a classroom for the orthopaedically handicapped and by refusing to provide her daily catheterization services, defendants have violated the Rehabilitation Act of 1973, 29 U.S.C. § 794. Second, plaintiffs contend that defendants have violated Kimber Sherer's right to equal protection of the laws by denying her the same free public education granted to other children without a "compelling justification." Plaintiffs next invoke this Court's pendent jurisdiction over two related state claims by asserting that defendants' actions in denying special catheterization services to Kimber Sherer and in segregating her in a classroom for the orthopaedically handicapped violate her rights under Article IX, Section 1(a) of the Missouri Constitution, and § 162.670, R.S.Mo. (1973).

Defendants have responded to plaintiffs' complaint with a Motion to Dismiss and, in the alternative presumably, a Motion for More Definite Statement and Separation of Plaintiffs' Claims. Defendants' motion and accompanying suggestions assert that plaintiffs' complaint should be dismissed because they have failed to exhaust adequate and available administrative remedies; that the claims under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, should be dismissed because that section does not create a pri-

vate right of action; and that plaintiffs' claims for money damages should be dismissed because of the qualified immunity possessed by all the defendants. In addition, defendants object to plaintiffs' noncompliance with Rule 10(b) of the Federal Rules of Civil Procedure by joining in one count claims arising out of separate occurrences and based upon both federal and state constitutions and federal and state laws.

Plaintiffs have filed suggestions in opposition to defendants' motion to dismiss. Plaintiffs' suggestions argue that exhaustion of administrative remedies is not required, essentially because those remedies allegedly are inadequate and assert that § 504 of the Rehabilitation Act does create an implied private right of action. In addition, plaintiffs contend that their damage claim should not be stricken until such time as there is a full evidentiary hearing in this action "for Plaintiffs to determine whether Defendants individually or as a group acted in bad faith or with malicious intent." No hearing has yet been held in this action.

The Rehabilitation Act of 1973 prohibits discrimination against handicapped persons by recipients of federal financial assistance. Section 504, 29 U.S.C. § 794, provides:

No otherwise qualified handicapped individual in the United States, as defined in Section 706(6), shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.[1]

The regulations further amplify the prohibition of the statute. 45 C.F.R. 84.4(b), 42 Fed.Reg. 22678–22679, provides:

(1) A recipient, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of handicap:

(iv) Provide different or separate aid, benefits, or services to handicapped persons or to any class of handicapped persons unless such action is necessary to provide qualified handicapped persons with aid, benefits, or services that are as effective as those provided to others . .

(3) Despite the existence of separate or different programs or activities provided in accordance with this part, a recipient may not deny a qualified handicapped person the opportunity to participate in such programs or activities that are not separate or different.

45 C.F.R. 84.33(c)(1), 42 Fed.Reg. 22682, provides:

---

1. As the regulations promulgated pursuant to the statute, 45 C.F.R. 84.3(j), 42 Fed.Reg. 22678, provide:

(1) "Handicapped persons" means any person who (i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.

(2) As used in paragraph (j)(i) of this section, the phrase:

(i) "Physical or mental impairment" means (A) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: . . . genito-urinary . . .

(ii) "Major life activities" means functions such as caring for one's self . . .

(k) "Qualified handicapped person" means:

(2) With respect to public preschool, elementary, secondary, or adult educational services, a handicapped person (i) of an age during which nonhandicapped persons are provided such services (ii) of any age during which it is man-

datory under state law to provide such services to handicapped persons . . .

The regulations, 45 C.F.R. 84.3, 42 Fed.Reg. 22678, further define recipients of federal financial assistance:

(f) "Recipient" means any state or its political subdivision, any instrumentality of a state or its political subdivision, any public or private agency, institution, organization, or other entity, or any person to which Federal financial assistance is extended directly or through another recipient, including any successor, assignee, or transferee of a recipient, but excluding the ultimate beneficiary of the assistance.

(h) "Federal financial assistance" means any grant, loan, contract (other than a procurement contract or a contract of insurance or guaranty) or any other arrangement by which the Department provides or otherwise makes available assistance in the form of: (1) Funds; (2) Services of Federal personnel; or (3) Real and personal property or any interest in or use of such property. . . .

. . . the provision of a free education is the provision of educational and related services without cost to the handicapped person or to his or her parents or guardian, except for those fees that are imposed on non-handicapped persons or their parents or guardian.

45 C.F.R. 84.34(a), 42 Fed.Reg. 22682, provides:

A recipient to which this subpart applies shall educate, or shall provide for the education of, each qualified handicapped person in its jurisdiction with persons who are not handicapped to the maximum extent appropriate to the needs of the handicapped person in the regular educational environment operated by the recipient unless it is demonstrated by the recipient that the education of the person in the regular environment with the use of supplementary aids and services cannot be achieved satisfactorily.

The regulations implementing Section 504 require that each school district establish administrative procedures under which persons aggrieved may obtain a hearing and review of the School District's actions taken with regard to the evaluation and placement of handicapped children. 45 C.F.R. 84.36; 42 Fed.Reg. 22683. The regulations further require that the administrative procedures include the due process guarantees of notice, opportunity to examine relevant records, an impartial hearing with opportunity for participation by the aggrieved persons and their counsel, and review of any adverse decision. The regulations make specific reference to the provisions of § 615 of the Education for All Handicapped Children Act of 1975, 20 U.S.C. § 1415, which sets out in more detail the administrative procedures which local school districts are expected to follow. 20 U.S.C. § 1415(e)(2) provides that any party aggrieved by the findings and decision made according to the administrative procedures established by the statute, shall have the right to bring a civil action in any state court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy, and further provides that "In any action brought under this paragraph, the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." Significantly, the statute also states, 20 U.S.C. § 1415(e)(3), that "During the pendency of any proceedings conducted pursuant to this section, unless the State of local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child . . . ."

The sanctions for noncompliance with the provisions of § 504 of the Rehabilitation Act arise from Executive Order 11914, 41 Fed. Reg. 17871 (April 28, 1976), which authorizes HEW to ensure compliance with § 504 "by the suspension or termination of, or refusal to award or continue, Federal financial assistance or by other appropriate means authorized by law, . . ." With respect to imposition of sanctions, the regulations specifically adopted the procedural provisions applicable to enforcement of Title VI of the Civil Rights Act of 1964, which appear at 45 C.F.R. 80.6 *et seq.*, and 45 C.F.R. 81.

### Discussion

This case presents a perplexing problem. The Congress of the United States has provided a right to handicapped individuals without explicitly defining the remedy for infringement of that right. In 29 U.S.C. § 793, Congress provided for enforcement of the Rehabilitation Act of 1973 against employers receiving money under federal contracts by directing that aggrieved individuals should file a complaint with the Secretary of Labor, who would take appropriate action. However, 29 U.S.C. § 794 provides no specific enforcement mechanism for individuals such as plaintiff Kimber Sherer, who are given rights under the Act to be free from discrimination while attending educational institutions which receive federal funds. Defendants therefore contend that plaintiff has no private cause

of action arising under the Rehabilitation Act of 1973. Plaintiffs, on the other hand, point to the clear language of the statute in claiming a right not to be excluded from benefits granted other students of the North Kansas City School District.

Plaintiffs rely upon the growing body of case law indicating that handicapped persons have a right against arbitrary classification, as expressed in § 504 of the Rehabilitation Act: "no otherwise qualified handicapped individual" shall be denied the right to participate in programs which are federally funded. See *Lloyd v. Regional Transp. Authority*, 548 F.2d 1277 (7th Cir. 1977); *Sites v. McKenzie*, 423 F.Supp. 1190 (N.D. W.Va.1976); *Gurmankin v. Costanzo*, 411 F.Supp. 982 (E.D.Pa.1976); *Hairston v. Drosick*, 423 F.Supp. 180 (S.D.W.Va.1976); *Kampmeier v. Nyquist*, 553 F.2d 296 (2d Cir. 1977); *Barnes v. Converse College*, No. 77–1116, 436 F.Supp. 635 (D.S.C.1977); see also *Bartels v. Biernat*, 405 F.Supp. 1012 (E.D.Wis.1975); *Crawford v. Univ. of North Carolina*, No. C–77–173–D, 440 F.Supp. 1047 (M.D.N.C.1977). It is true that some courts have found an implied right of action in § 504 of the Rehabilitation Act of 1973. *Hairston v. Drosick, supra; Sites v. McKenzie, supra*.

The genesis of the private-right-of-action theory lies in *Lau v. Nichols*, 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974). *Lau* was a class action brought under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, involving 1,800 San Francisco school children of Chinese ancestry who claimed that they were being denied the right to a meaningful education because they were unable to speak English. In reversing a decision by the Fifth Circuit Court of Appeals that the failure of the school system to provide English language instruction did not violate Title VI, which bans discrimination based

"on the ground of race, color, or national origin," in "any program or activity receiving Federal financial assistance," the United States Supreme Court found that the school district had contractually agreed to comply with Title VI and all requirements imposed by or pursuant to the regulations of HEW promulgated under the statute, Justice Stewart's concurring opinion noted that defendants had not questioned plaintiffs' standing to bring the action as third-party beneficiaries of the contract. Justice Blackmun's concurrence emphasized that the result might be different in a case concerned "with a very few youngsters, or with just a single child . . . ."

Relying upon the *Lau* decision, the Court of Appeals for the Seventh Circuit held in *Lloyd v. Regional Transp. Authority*, 548 F.2d 1277 (7th Cir. 1977), that § 504 of the Rehabilitation Act, and the regulations pursuant thereto, grant affirmative rights to handicapped persons. The Court noted from the legislative history of the Act that the similarity of § 504 to § 601 of the Civil Rights Act of 1964 (Title VI) was not accidental, and that the enforcement mechanism of the two statutes also was the same. The decision further recognized that the legislative history of § 504 clearly contemplated judicial review of *administrative* proceedings.[2] 548 F.2d at 1286. At the time of the *Lloyd* decision, however, final regulations had not been issued by HEW pursuant to § 504, and in view of those circumstances, despite its recognition that Congress intended judicial review of administrative proceedings, the Court in *Lloyd* stated:

> While the above language contemplates judicial review of an administrative proceeding as contradistinct from an independent cause of action in federal court, still it is plain that the rights of the handicapped were meant to be enforced

---

**2.** The report of the Senate Labor and Public Welfare Committee, cited by plaintiffs herein, states that " . . . implementation of section 504, which closely follows the models of the above-cited anti-discrimination provisions, would ensure administrative due process (right

to hearing, right to review), provide for administrative consistency within the Federal government as well as relative ease of implementation, and permit a judicial remedy through a private action." 4 U.S.Code Cong. & Admin.News, pp. 6373, 6391 (1974).

at some point through the vehicle of a private cause of action. When administrative remedial machinery does not exist to vindicate an affirmative right, there can be no objection to an independent cause of action in federal courts.

The Court expressly left open as premature the question whether, after consolidated procedural enforcement regulations were issued by HEW pursuant to § 504, the judicial remedy available must be limited to post-administrative remedy judicial review, and stated that "until effective enforcement regulations are promulgated, Section 504 in its present incarnation as an independent cause of action should not be subjugated to the doctrine of exhaustion." *Id.* at 1286, n. 29.

In a case involving Title IX of the Education Amendments of 1972, 20 U.S.C. § 1682, the Seventh Circuit previously had determined that no private cause of action is expressly or impliedly provided until Title IX and that judicial review of agency action taken under the scheme of administrative enforcement through the Department of HEW, is the only court procedure specified. *Cannon v. Univ. of Chicago,* 559 F.2d 1063, 12 E.P.D. 5382 (7th Cir. 1976). The Court in *Cannon* interpreted *Lau* and the cases finding a right of action under Title VI as applying only where a large number of plaintiffs sought to enforce a national constitutional right, and not providing a private right for each individual plaintiff, and concluded that construing Title IX to provide a private cause of action before the administrative remedy expressly provided for therein has been exhausted would be to violate the intent of Congress. In the present action, defendants rely upon the reasoning of *Cannon* and the fact that, unlike the circumstances in *Lloyd,* HEW now has promulgated final regulations implementing § 504, to support their position that § 504 does not provide a private right of action in this case.

This Court finds persuasive the reasoning contained in the United States Magistrate's report and recommendation in the most recent consideration of this question known to this Court.[3] In *Crawford v. University of North Carolina,* No. C–77–173–D, 440 F.Supp. 1047 (M.D.N.C.), where a deaf graduate student sought an Order requiring the university to provide him an interpreter, the United States Magistrate recognized the plaintiff's probable right to assert a private claim to affirmative relief under the Rehabilitation Act at some point, but recommended that the Court invoke the doctrine of primary jurisdiction and the concomitant question of exhaustion. The Magistrate in *Crawford* further noted the conclusion drawn by the Seventh Circuit in *Lloyd* that "assuming a meaningful administrative enforcement mechanism, the private cause of action under Section 504 should be limited to a *posteriori* judicial review," and the additional fact that HEW now has issued regulations implementing § 504 which permit a handicapped individual to trigger and participate in a review of alleged non-compliance with the Rehabilitation Act. Accordingly, the Magistrate in *Crawford* recommended that the action be stayed under the primary jurisdiction doctrine, and that the plaintiff be required to file a complaint with HEW. After balancing the harms between plaintiff and defendant and noting that plaintiff had filed his action prior to the issuance of the regulations and thus had no opportunity to pursue administrative remedies, the Magistrate further recommended that the District Court issue a preliminary injunction requiring the university to provide plaintiff an interpreter for his attendance of graduate courses at the university .pending exhaustion of administrative remedies. See also *Barnes v. Converse College,* No. 77–1116, 436 F.Supp. 635 (D.S.C. July 13, 1977).

▮ This Court has carefully examined the case authority and the legislative histo-

---

**3.** The Magistrate's Report and Recommendation, made under the authority of 28 U.S.C. § 636, was filed September 1, 1977. No action to date having been taken by the District Court, the case remains pending in the Middle District of North Carolina.

ry of § 504 of the Rehabilitation Act of 1973. That study does lead to the conclusion urged by plaintiffs·that handicapped individuals do possess a right created by § 504. Important as that right may be, however, this Court does not agree that Congress intended it to be enforced by a private individual through a private civil action in the United States District Court without resort to the administrative machinery established by the Act and regulations.

■■ There are no large numbers of handicapped individuals involved in this suit.[4] Unlike *Lloyd*, final regulations have been issued; thus, effective administrative machinery exists to vindicate plaintiff's rights.[5] As the Court of Appeals for the Seventh Circuit stated so effectively in *Cannon*, supra, 559 F.2d at 1074, 12 E.P.D. at 5387:

> From a policy viewpoint we see little to be gained by involving the judiciary in every individual act of discrimination . . . .. Perhaps our resources would be better spent in litigation challenging wholesale sexual discrimination against a large number of men or women by a particular educational institution. Title VI has been effectively employed in this fashion, and we see no reason why Title IX would not provide a similar jurisdictional base for those cases where the administrative abilities of HEW would be inundated or inadequate. However, for the day-to-day problems, stemming from the long-overdue social revolution in equality of the sexes, we think the HEW administrative procedure is best. Although some commentators have taken the view that working through HEW is painstakingly slow and ineffective, we fail to see how a private lawsuit by individual parties· would facilitate an end to sex discrimination. *To allow a private right of action would be engaging in judicial legislation. Considering our already overburdened system we fail to see why we should stretch a statute by judicial interpretation to the point where it would allow additional litigation which we may not be able to properly accommodate.* [Emphasis supplied.]

A private right of action should not be lightly implied under a statute where Congress has not specifically provided one—especially where Congress has provided for other means of enforcement. *Cannon, id.*; *National Railroad Passenger Corp. v. National Ass'n. of Railroad Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974); *Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975); *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The other means of enforcement under § 504 is clear, and even the Seventh Circuit in *Lloyd* recognized that the legislative history of § 504 indicates that Congress clearly contemplated judicial review of *administrative* proceedings. 548 F.2d at 1286. Although circumstances present in *Lau* and *Lloyd* may have warranted implying a right of action not specifically provided by Congress, those circumstances are not present in this case. This Court accordingly finds that plaintiffs may not now assert a private

---

4. Although plaintiffs contend that a decision in this case may affect others, this is not a class action and plaintiffs do not contend that other students require intermittent catheterization refused by the School District. A decision on these facts certainly would not bind the School District with respect to other unspecified services related to other unspecified conditions or handicaps.

5. Accustomed to complaints about the lack of speed with which the wheel of justice grinds in the federal system, this Court is unimpressed by plaintiffs' argument that because the Office of Civil Rights suffers from a backlog of complaints, the administrative machinery implementing § 504 is ineffective. It is not the function of this Court to conclude that an overcrowded federal agency docket creates undue delay and therefore this Court should create a judicial remedy which Congress did not intend. Adopting plaintiffs' argument would result in a complete by-pass of the administrative scheme established by Congress and would cause a deluge of such cases in the federal courts.

right of action arising under § 504 of the Rehabilitation Act of 1973.

Nor does this Court find imposition of injunctive relief appropriate. While the United States Magistrate in *Crawford* did recommend issuance of a preliminary injunction pending plaintiff's resort to his administrative remedy, the Magistrate specifically based his recommendation on the finding that plaintiff filed his action prior to the issuance of the regulations and thus had no opportunity to pursue administrative remedies. That situation does not exist in the present case, which was filed on August 9, 1977, over two months past the June 3, 1977, effective date of the regulations. In addition, unlike the situation presented in *Crawford*, the provisions of the Education for All Handicapped Children Act of 1975, 20 U.S.C. § 1415(e)(3), became effective October 1, 1977. This Court deems significant the guidance therein provided by Congress as to the procedure effective during the pendency of judicial proceedings. The pertinent portion reads:

> (e)(3) During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child . . . . .

Accordingly, plaintiffs' application for injunctive relief will be denied.

■ Nor may plaintiffs assert their claim for damages against defendants under the Civil Rights Act, 42 U.S.C. § 1983. First, plaintiff Cheryl Sherer lacks standing to assert deprivation of her daughter's rights as the basis of a claim for her own loss of income. See, e. g., *Singleton v. Wulff*, 428 U.S. 106, 114, 96 S.Ct. 2869, 49 L.Ed.2d 826 (1976); *McGowan v. Maryland*, 366 U.S. 420, 429, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *United States v. Raines*, 362 U.S. 17, 22, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960); *Regents of the Univ. of Minnesota v. The Nat'l Collegiate Athletic Ass'n.*, 560 F.2d 352 (8th Cir. 1977). Second, defendants possess a quali-

fied good-faith immunity from liability for damages under § 1983, based upon common law tradition and strong public policy that such officers should be protected from tort liability arising under state law for all good-faith, non-malicious actions taken in order to fulfill their official duties. *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Strickland v. Inlow*, 519 F.2d 744 (8th Cir. 1975). The complaint herein makes no allegation whatsoever that the acts of defendants were taken in bad faith or maliciously, and plaintiffs have not attempted to make such an allegation in response to defendants' motion to dismiss. In the absence of such an allegation, plaintiffs may not continue to assert their claim for damages against defendants, and that claim will be stricken.

Plaintiffs also have alleged a cause of action based upon a denial of equal protection. Plaintiffs argue that Kimber Sherer has been denied the right to a free public education as granted to all other children of school age, and that the defendants do not have a "compelling justification" for segregating plaintiff outside a regular classroom. Plaintiffs appear to argue that defendants have created a "suspect classification" by refusing to provide catheterization to plaintiff, and that the creation of this "suspect class" therefore gives rise to invidious discrimination the legal justification for which must be based on a "compelling state interest" rather than on a mere rational basis. See *Shapiro v. Thompson*, 394 U.S. 618, 638, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

■ This Court declines to rule that defendants have created a "suspect class" or that the right to education is constitutionally a "fundamental right." *San Antonio School District v. Rodriguez*, 411 U.S. 1, 44, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Education is not among the rights afforded explicit or implicit protection under the United States Constitution. *Id.* Therefore, if discrimination does exist, the traditional equal protection test is applicable. The complaint does not allege that defendants

have denied plaintiff Kimber Sherer an education, but rather that defendants have refused to provide special services to her which services are not provided other students. This Court is not convinced that the Constitution places an affirmative duty on the defendants to provide special services for a special class of people as plaintiffs assert. *United Handicapped Federation v. Andre*, 409 F.Supp. 1297 (D.Minn.1976). As alleged in the complaint, the facts of this case simply do not appear to involve. any invidious discrimination against similarly situated persons. Accordingly, plaintiffs' claims under the equal protection clause of the United States Constitution will be dismissed.

Nor does the complaint reveal a denial of plaintiffs' right to due process of law. On the contrary, as defendants point out, the complaint indicates plaintiffs' failure to avail themselves of the administrative procedures, replete with due process safeguards, which have been provided for them.

Finally, plaintiffs assert herein claims arising under the Missouri Constitution, Article IX, Section 1(a), and state law, § 162.-670, R.S.Mo. For the reason that plaintiffs' federal claims will be dismissed, as discussed above, plaintiffs' claims arising under state law also will be dismissed.

For all the foregoing reasons, therefore, it is hereby

ORDERED that the above-styled action be, and it is hereby, dismissed without prejudice.