498 F.Supp. 944 (1980)
Terri Ann MIENER, etc., Plaintiff,
v.
STATE OF MISSOURI et al., Defendants.
No. 79-1050C(2).
United States District Court, E. D. Missouri, E. D.
January 25, 1980.
*945 M. Peter Fischer, J. Peter Schmitz, Mary Stake Hawker, Schmitz & Fischer, St. Louis, Mo., for Special School District of St. Louis County, Mo., The Board of Education of Special School District of St. Louis County, Mo., Allan G. Barclay, Gerald K. Braznell & Gerald B. Hansen, Directors of Special School District of St. Louis County, Mo.; Thomas E. Smith, Supt. of Schools of Special School District of St. Louis County, Mo.
William F. Arnet, Joel S. Wilson, J. Kent Lowry, Asst. Attys. Gen., State of Missouri, Jefferson City, Mo., Simon Tonkin, Asst. Atty. Gen., St. Louis, Mo., for State of Missouri, Joseph Teasdale, Dept. of Elementary & Secondary Education, Arthur L. Mallory, Dr. Leonard Hall, Department of Mental Health of State of Missouri, Norman Tice; Dr. Beverly Wilson, Mr. John Twiehaus, Dr. Milton Fujita.
Carl I. Katzen, St. Louis, Mo., for State of Mo. Dept. of Mental Health as to allegations of Count IV only.
Leo M. Newman, Newman & Bronson, St. Louis, Mo., for State of Missouri.
Albert J. Haller, Steven L. Leonard, Cupples, Cooper & Haller, Inc., Clayton, Mo., for plaintiff.

MEMORANDUM
NANGLE, District Judge.
This case is now before the Court on motions to dismiss of various defendants. This cases arises out of the tragic circumstances of a young girl's serious physical and emotional handicaps and her concerned father's attempts to obtain satisfactory treatment and education. Plaintiff seeks monetary, injunctive and declaratory relief due to defendants' alleged violations of the Education of the Handicapped Act, 20 U.S.C. § 1401 et seq. Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and the Civil Rights Act, 42 U.S.C. § 1983. Plaintiff also seeks damages for the allegedly tortious conduct of two defendants.
Named as defendants are numerous individuals and political bodies and agencies: the State of Missouri and its Chief Executive Officer, Governor Joseph Teasdale; the Missouri Department of Elementary and Secondary Education, and its Commissioner, Arthur Mallory, and Assistant Commissioner, Dr. Leonard Hall; the Missouri Department of Mental Health, its acting Director, Dr. Beverly Wilson, and the Chairman of the State Mental Health Commission, Norman Tice; the acting Superintendent of the St. Louis State Hospital, John Twiehaus, and the former Medical Director of the Youth Center at that Hospital, Dr. Milton Fujita; and the Special School District of St. Louis County, Missouri, its Board of Education, its Directors, Allan Barclay, Gerald Braznell, and Gerald Hansen, and its Superintendent of Schools, Thomas Smith.
This suit was initially filed on August 27, 1979, and a preliminary injunction was requested. The complaint alleged that plaintiff, a seventeen year old girl, was then a voluntary resident of the Youth Center of the St. Louis State Hospital, suffering from serious physical and emotional disorders. The complaint further alleged that defendants were discriminating against plaintiff because of those disorders, in violation of Section 504 and 42 U.S.C. § 1983, and failing to provide plaintiff with a free, appropriate public education, in violation of the *946 Education of the Handicapped Act. A pendent state claim was also alleged, claiming that defendants Twiehaus and Fujita had failed in their duty to provide a reasonably safe environment for the residents at the Youth Center, resulting in frequent physical attacks upon plaintiff by residents and staff at the Center.
It has been clear from the outset that plaintiff's father's primary concern has been to ensure that plaintiff is provided adequate treatment, education, and care. To this end, a mandatory preliminary injunction was requested which would direct the defendants to place plaintiff in the Brown School in Austin, Texas, and pay for her care there pending the outcome of this litigation. Plaintiff alleged that the Brown School was an adequate facility which had agreed to accept her as a patient, and that there were no such facilities in the State of Missouri.
This Court met with the parties on October 18, 1979. At that time it was decided that a hearing on the merits would be postponed in order to allow plaintiff to pursue the administrative remedies set out in the Education of the Handicapped Act, its accompanying regulations, and the state legislation implementing the Act. 20 U.S.C. § 1401 et seq.; 45 CFR § 121a.1 et seq.; and § 162.945 et seq., RSMo (1979). This Court indicated that, if plaintiff was not satisfied that she was being offered an appropriate educational plan after the exhaustion of these administrative procedures, an appeal would lie to this Court pursuant to 20 U.S.C. § 1415(e)(2). At that time, a preliminary injunction was deemed unnecessary because all indications were to the effect that the impetus of litigation had caused defendants to vigorously protect plaintiff's welfare.
Since that time, the parties have been before this Court on several occasions to report on the progress of the administrative process. On December 31, 1979, this Court entered an order directing that, pending the final outcome of the administrative process, the Individual Education Plan developed by the State Hospital and Special School District personnel be implemented. Costs of this plan were to be paid on an interim basis, with a determination of ultimate responsibility to be made in the future.
It is now appropriate to deal with the numerous motions to dismiss which have been filed by the various defendants in this case. Two grounds raised by defendants will not be dealt with at this time: plaintiff's failure to exhaust administrative remedies under the Education of the Handicapped Act and the relative responsibilities of the various school districts involved. The former is moot in light of plaintiff's current utilization of the administrative process; the latter will be dealt with upon the filing of subsequent motions for summary judgment specifically addressed to this issue.
Defendants have raised numerous grounds for dismissal of portions of this lawsuit, but several key issues immediately stand out, and the resolution of these issues moots many of the remaining arguments. Plaintiff claims in Counts II and III that she has been discriminated against due to her handicapped condition with respect to access to public education and treatment. These counts raise the issues of whether Section 504 may be utilized to support a private right of action for equitable relief and damages, and, if so, whether plaintiff must first exhaust her administrative remedies.
Section 504 provides, in pertinent part, as follows:
No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .
The Department of Health, Education and Welfare promulgated regulations, in effect during the times relevant to this litigation, which implemented this statutory prohibition of discrimination against the handicapped. See 45 CFR Part 84. An enforcement scheme was set up which coincided *947 with the enforcement provisions of Title VI of the Civil Rights Act of 1964 ("Title VI"). 42 U.S.C. § 2000d et seq.; 45 CFR §§ 80.6 through 80.11 and 45 CFR Part 81; 45 CFR § 84.61. This scheme of enforcement was undoubtedly prompted by the Congressional intent that enforcement of Section 504 would be through means similar to those employed in the implementation of Title VI. N.A.A.C.P. v. Medical Ctr., Inc., 599 F.2d 1247, 1258 (3rd Cir. 1979).
Prior to the adoption of these regulations, it was generally held that Section 504 could be enforced through a private cause of action. Lloyd v. Regional Transportation Authority, 548 F.2d 1277 (7th Cir. 1977); United Handicapped Federation v. Andre, 558 F.2d 413 (8th Cir. 1977); Davis v. Southeastern Comm. College, 574 F.2d 1158 (4th Cir.), rev'd on other grounds 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). The Supreme Court found it unnecessary to rule on this issue in the only case involving Section 504 which has come before it. See, Davis, supra, at 404 n.5, 99 S.Ct. 2361.
The adoption of implementing regulations has cast doubt upon these holdings, however. In Lloyd, the court stated that, once procedural enforcement regulations were issued to implement Section 504, the private cause of action should be limited to judicial review of this administrative process. Lloyd, supra at 1286 n.29. See, also Davis, 574 F.2d at 1163 n.9. The cases which arose subsequent to the issuance of these regulations are not in agreement as to whether a private right of action still exists at all, and, if so, whether administrative remedies must first be exhausted. N.A.A. C.P., supra; Whitaker v. Board of Higher Ed. of City of New York, 461 F.Supp. 99 (E.D.N.Y.1978). Cf. Sherer v. Waier, 457 F.Supp. 1039 (W.D.Mo.1977); Crawford v. University of North Carolina, 440 F.Supp. 1047 (M.D.N.C.1977); Doe v. New York University, 442 F.Supp. 522 (S.D.N.Y.1978); Doe v. Calautti, 454 F.Supp. 621 (E.D.Pa.), aff'd 592 F.2d 704 (3rd Cir. 1979).
This Court must conclude that as far as suits to enforce Section 504 are concerned, as opposed to suits seeking damages for alleged violations of that section, a private right of action exists without regard to prior resort to administrative remedies.
The Supreme Court recently dealt with a similar issue in Cannon v. University of Chicago, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), in which Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 et seq., was involved. In its analysis of the issue, the Supreme Court began with the premise that Title IX was intended by Congress to be interpreted and enforced in the same manner as Title VI. In this respect, Title IX is directly analogous to Section 504, N.A.A.C.P., supra, and this Court must conclude, therefore, that the decision in Cannon with respect to Title IX is directly applicable to the present issue concerning Section 504.
In Cannon, the Supreme Court held that, despite the absence of any express authorization in Title IX for the maintenance of a private cause of action to enforce that Title, such a cause of action should be implied. The Court also held that exhaustion of administrative remedies was not required prior to the institution of such a suit. Cannon, supra, 441 U.S. at 706 n.41, 99 S.Ct. 1962.
Title VI prohibits discrimination in federally funded programs on the basis of race, color or national origin; Section 504 extends this prohibition to discrimination on the basis of handicaps; Title IX prohibits discrimination on the basis of sex in federally funded educational programs. Complaint under all three statutes are administratively handled through the same procedures and regulations. 45 CFR §§ 80.6 through 80.11; 45 CFR Part 81; 45 CFR § 84.61; 45 CFR § 86.71. This Court must therefore conclude that the implication of a private right of action to enforce Title IX without prior resort to administrative procedures mandates a similar conclusion with respect to Section 504. N.A.A.C.P., supra. See, also University of California Regents v. Bakke, 438 U.S. 265, 418-421, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978) (Opinion of Stevens, J.), in which four justices imply a similar result with respect to Title VI.
*948 A more difficult question is posed with respect to private actions, such as this, which, in addition to seeking the enforcement of Section 504, also seek damages for its violation. Little guidance can be found in previous cases dealing with this Section, Title VI, or Title IX. Previous cases dealing with Section 504 have either excluded any mention of the implication of a private right of action for damages, Lloyd, supra; Andre, supra, or have specifically disclaimed any intent to decide that issue. Davis, 574 F.2d at 1162; N.A.A.C.P., supra at 1248 n.1. Though a few cases have dealt with this issue in the context of Title VI, the law is equally unclear with respect to that statute. See, Bakke, supra, 438 U.S. at 419 n.25, 98 S.Ct. 2733 (Opinion of Stevens, J.); Chambers v. Omaha Public School District, 536 F.2d 222, 225 n.2 (8th Cir. 1976). Compare Gilliam v. City of Omaha, 388 F.Supp. 842 (D.Neb.1975); Flanagan v. President & Directors of Georgetown Col., 417 F.Supp. 377 (D.C.D.C.1976), with Rendon v. Utah State Dept. of Emp. Sec., Etc., 454 F.Supp. 534 (D.Utah 1978). Similarly, in Cannon the plaintiff's claim for damages for violation of Title IX was dismissed by the District Court, 406 F.Supp. 1257, 1259, but there is no indication that the Supreme Court dealt with this issue in its decision. 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).
The inquiry as to whether a private cause of action should be implied under Section 504 is guided by the factors enunciated in Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975): 1) whether the statute was enacted for the benefit of a special class of which plaintiff is a member, 2) whether there is any indication of legislative intent to create a private remedy, 3) whether implication of such a remedy is consistent with the legislative scheme, and 4) whether implying a federal remedy is inappropriate because the subject matter involves an area basically the concern of the States. Though all four factors are relevant, the second and third factors are clearly the most important. Cannon, supra. An analysis of these factors in the present context leads to the conclusion that plaintiff may not assert a cause of action for damages under Section 504.
Undoubtedly, Section 504 was enacted for the benefit of a special class of persons of which plaintiff is a member. Similarly, protection from discrimination is not an area of primary concern to the States.
The right of participants in federally funded programs to be free from unlawful discrimination on account of race or handicap, is preeminently the province of federal, not state, law.
N.A.A.C.P., supra at 1252.
Nowhere in the legislative history of Section 504, however, is there the slightest indication that this Section might be the basis of a private damage suit. As previously mentioned, the legislative history shows an intent that the Section be enforced in the same manner as Title VI, and there is no authoritative decision allowing such damage suits under Title VI. Though there are passages in the legislative history referring to private enforcement suits, there is no such reference to damage suits, an incongruous circumstance if such suits were actually contemplated.
The implication of such damage suits would also be inconsistent with the legislative scheme. Through private enforcement suits individuals are able to vindicate their personal rights. The power to enforce the statute's non-discriminatory mandate through fiscal pressures, however, is best left to the appropriate governmental agency, which is better able to determine whether an illegal discriminator deserves the cutoff of federal funds. N.A.A.C.P., supra at 1255 n.27. Though in a private damage suit the plaintiff is attempting to recover for his own benefit, the fiscal effect upon the defendant in such suits might likely be the same as a cut-off of funds. A recipient of federal funds might well decide to forego such assistance when faced with the possibility of liabilities approaching or exceeding the funds received. If so, the recipient might then be free to discriminate against the handicapped, or blacks or women for that matter, and everyone loses.
*949 This Court must therefore conclude that defendants' motion to dismiss with respect to plaintiff's claim for damages under Section 504 should be granted.
Plaintiff apparently is also proceeding under 42 U.S.C. § 1983 in Counts II and III, pursuant to which a damage award is allowable. It is clear, however, that a cause of action under that statute is not stated. Sherer v. Waier, supra. As in Sherer, the facts as alleged in the complaint do not appear to involve any invidious discrimination against similarly situated individuals. What is involved are allegations of discrimination against plaintiff because of her handicaps. Such discrimination is made illegal by Section 504, not the constitution.
A similar conclusion must be reached with respect to plaintiff's claim for damages due to defendants' alleged violation of the Education of the Handicapped Act. That Act provides specific remedies for aggrieved students and parents, and the implication of an additional remedy is not warranted. National Railroad Passenger Corp. v. National Association of Railroad Passengers, 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974). There is nothing in the legislative history of the Act to indicate that Congress favored the implication of such a cause of action, and the implication of a private right of action for damages would interfere with efforts to supply appropriate and innovative education to the handicapped. Loughran v. Flanders, 470 F.Supp. 110 (D.Conn.1979). This Court must agree with the decision in Loughran that a private cause of action for damages should not be implied. Defendants' motion to dismiss the damage claims under the Education of the Handicapped Act will therefore be granted.
These rulings should dispose of defendants' remaining arguments. All defendants are properly before this Court due to their necessary involvement in effecting any relief that may later be found necessary. Welsch v. Likins, 550 F.2d 1122 (8th Cir. 1977), and should not be dismissed from this suit due to an alleged lack of personal involvement in the events surrounding this controversy. Defendants' remaining claims are without merit.